UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DANURELL B.,[1] *Plaintiff*, v. FRANK J. BISIGNANO, *Commissioner of Social Security Administration*, *Defendant*. | ) | No. 1:25-cv-02570-JMS-MJD |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Danurell B. applied for a period of disability and supplemental security income ("SSI") from the Social Security Administration ("SSA") on August 22, 2023, with a disability onset date of January 1, 2013. [Filing No. 11-5 at 3-4.] His application was denied initially on February 23, 2024, [Filing No. 11-4 at 17-20], and upon reconsideration on September 5, 2024, [Filing No. 11-4 at 38-44]. Administrative Law Judge Timothy Turner ("the ALJ") conducted a telephonic hearing on February 5, 2025, [Filing No. 11-2 at 32-52], before issuing a decision on February 14, 2025 in which he concluded that Danurell B. was not entitled to benefits, [Filing No. 11-2 at 10-20]. The Appeals Council denied review on October 16, 2025. [Filing No. 11-2 at 1-6.] On December 19, 2025, Danurell B. filed this civil action pursuant to 42 U.S.C. § 405(g), seeking a review of the denial of his benefits. [Filing No. 1.]

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

## I.
## Standard of Review

"The Social Security Administration provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Hess v. O'Malley*, 92 F.4th 671, 677 (7th Cir. 2024) (quoting 42 U.S.C. § 423(d)).

When an applicant appeals an adverse benefits decision, the Court "will reverse an ALJ's decision only if it is the result of an error of law or if it is unsupported by substantial evidence." *Martin v. Kijakazi*, 88 F.4th 726, 729 (7th Cir. 2023) (citing *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). Substantial evidence is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citation omitted). Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "But even under this deferential standard of review, an ALJ 'must provide a logical bridge between the evidence and [the] conclusions.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Hess*, 92 F.4th at 677 (citations omitted); 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed;
>
> (2) whether the claimant has a severe impairment;
>
> (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner];
>
> (4) whether the claimant can perform [his] past work; and
>
> (5) whether the claimant is capable of performing work in the national economy.

*Hess*, 92 F.4th at 677 (quoting *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001)). A claimant is disabled if he satisfies Steps One, Two, and Three. *Gedatus*, 994 F.3d at 898. If a claimant satisfies Steps One and Two, but not Step Three, the claimant must then satisfy Step Four to be found disabled. *See id.* "The burden of proof is on the plaintiff at steps one through four, but the burden shifts to the Commissioner at step five." *Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). "[I]f the ALJ can make a conclusive finding at any step that the claimant either is or is not disabled, then [he] need not progress to the next step." *Hess*, 92 F.4th at 677-78 (quotations and citation omitted).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC"), which is an assessment of "the most an individual can work despite his or her limitations or restrictions." *Jarnutowski*, 48 F.4th at 773 (citation omitted). An ALJ must consider seven strength functions when assessing a claimant's RFC to work: "lifting, carrying, sitting, standing, walking, pushing, and pulling." *Id.* at 773-74 (citing SSR 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996)). An ALJ must also describe "how the evidence supports each conclusion [on strength functions], citing specific medical facts (*e.g.*, laboratory findings)

and nonmedical evidence (e.g., daily activities, observations)." *Jarnutowski*, 48 F.4th at 773 (quoting SSR 96-8p, 61 Fed. Reg. at 34478). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe and may not dismiss a line of evidence contrary to the ruling." *Id.* at 774 (quotations and citation omitted). "Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.'" *Id.* (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)). The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.920(a)(4)(iv), (v).

If the ALJ's decision "uses the correct legal standards, is supported by substantial evidence, and builds an accurate and logical bridge from the evidence to the ALJ's conclusions," the Court must affirm the denial of benefits. *Hess*, 92 F.4th at 677 (quotations and citation omitted); *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024). But if the ALJ's decision "is based on incorrect legal standards or unsupported by substantive evidence," the Court will remand for further consideration. *Baptist v. Kijakazi*, 74 F.4th 437, 441 (7th Cir. 2023) (citations omitted).

## II.
## BACKGROUND

Danurell B. was 34 years of age on his alleged onset date and 45 years old at the time of his application. [*See* Filing No. 11-5 at 3-4.] He has a high school education and does not have any previous relevant work experience.[2] [Filing No. 11-2 at 37-38.]

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Danurell B. was not disabled. [Filing No. 11-2 at 12-20.] Specifically, the ALJ found as follows:

- At Step One, Danurell B. had not engaged in substantial gainful activity[3] since July 18, 2023. [Filing No. 11-2 at 12.]

- At Step Two, Danurell B. has the following severe impairments: major depressive disorder and generalized anxiety disorder. [Filing No. 11-2 at 12-14.]

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 11-2 at 14-15.]

- After Step Three but before Step Four, Danurell B. had the RFC to perform "a full range of work at all exertional levels but with the following non-exertional limitations: he can perform simple, routine, and repetitive tasks. He is able to interact with supervisors occasionally. He can have occasional, incidental interaction with coworkers, in that he need not listen or talk to coworkers to perform job tasks, is not an integral part of a team, and does not work in tandem with others. He is never able to interact with the public." [Filing No. 11-2 at 15-18.]

- At Step Four, Danurell B. has no past relevant work and was able to perform the requirements of representative occupations, including floor cleaner, motor vehicle assembler, and hand packager. [Filing No. 11-2 at 18-19.]

## III.
## DISCUSSION

Although Danurell B.'s brief contains only one sub-heading in his argument section – "The ALJ Relied on a Flawed Hypothetical Question to the Vocational Expert" – he actually raises two separate issues within that sub-heading: (1) whether the ALJ's RFC finding is supported by the

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

medical evidence; and (2) whether the ALJ relied on flawed hypothetical questions to the Vocational Expert ("VE"). [Filing No. 15 at 9-14.] The Court discusses each issue in turn.

**A. RFC Determination**

Danurell B. argues that the ALJ did not support his finding that Danurell B. can perform a full range of work at all exertional levels, with certain limitations, and "did not find opinions from any of the medical sources to assess [Danurell B.'s] mental impairments as probative on [his] capacity to engage in exertional activities." [Filing No. 15 at 10.] He asserts that the ALJ "at least partially rejected the opinions from every medical source in the record," so it is not clear what medical evidence supports the ALJ's RFC determination. [Filing No. 15 at 10.] Danurell B. argues that the ALJ did not cite to any specific medical facts or "even persuasive non-medical evidence" to support his "mental RFC finding," and did not account for Danurell B.'s moderate limitations in concentration, persistence, and pace. [Filing No. 15 at 11-13.]

The Commissioner argues in his response that Danurell B. has not pointed to "any specific evidence that required additional functional limitations," "cites no evidence supporting his assertion that he should have been more limited than the ALJ's finding as to his [RFC]," and "fails to show that he is more limited than the ALJ found." [Filing No. 17 at 4-5.] He notes that when the ALJ determined that Danurell B. had moderate limitations in maintaining concentration, persistence, or pace, he "properly acknowledged [Danurell B.'s], and his wife's, subjective allegations, but noted that [his] difficulties during a consultative examination stemmed largely from his own poor effort during the exam," and also noted that one of Danurell B.'s providers observed that Danurell B. "demonstrated good attention and concentration; unremarkable thought content; and logical, coherent, and sequential thought processes." [Filing No. 17 at 6.] The Commissioner agues that in finding that Danurell B. had a moderate limitation in the ability to

adapt or manage himself, the ALJ acknowledged Danurell B.'s and his wife's allegations that Danurell B. had difficulty handling stress and changes in routine, had trouble leaving the house, and experienced low energy and motivation, but also noted observations from a provider that Danurell B. "demonstrated fair insight and judgment and had good grooming and normal psychomotor activity," and Danurell B.'s report that he felt stable with medication. [Filing No. 17 at 6.] The Commissioner also argues that the ALJ explained what evidence supported his determination that Danurell B. could perform work that involved simple, routine, and repetitive tasks with limited social interactions. [Filing No. 17 at 8-10.] He contends that the Court cannot reweigh evidence and that the ALJ's RFC determination is supported by substantial evidence. [Filing No. 17 at 10-13.]

Danurell B. reiterates his arguments in his reply. [Filing No. 18.] Additionally, he asserts that the ALJ did not account for limitations in Danurell B.'s ability to adapt or manage himself in the RFC. [Filing No. 18 at 2-3.]

The RFC is an indication of the most that the claimant can do in a work setting despite his mental and physical limitations, and must incorporate all of the claimant's limitations supported by the medical record. 20 C.F.R. § 404.1545; *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). While the ALJ need not discuss every piece of evidence in the record, the ALJ must "build an accurate and logical bridge from the evidence to [the] conclusion" so that the reviewing court "'may assess the validity of the agency's final decision and afford [a claimant] meaningful review.'" *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (internal quotations omitted); *see also Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) ("Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, [she] may not ignore entire lines of contrary

evidence."); *Zurawski*, 245 F.3d at 889 ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits."). "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p.

*1. Ability to Perform Work at All Exertional Levels*

First, as to Danurell B.'s ability to perform a full range of work at all exertional levels, Danurell B. simply states that the ALJ did not support that finding but does not provide any examples of what exertional limitations he might need and what medical evidence supports that need. Instead, he focuses on his mental limitations. The Court finds that Danurell B. has not adequately supported his argument related to exertional limitations and goes on to consider the ALJ's findings regarding Danurell B.'s mental limitations.

*2. Ability to Perform Simple, Routine, and Repetitive Tasks*

Second, as to the RFC's limitation that Danurell B. can only perform simple, routine, and repetitive tasks, the ALJ found in considering whether Danurell B. had an impairment or combination of impairments that met or medically equaled the severity of a listed impairment that Danurell B. had moderate limitations in concentration, persistence, and pace, summarizing poor results during the consultative examiner's evaluation but noting that Danurell B.'s treating provider had reported that he "displayed good attention/concentration, unremarkable thought content, and logical, coherent, and sequential thought processes." [Filing No. 11-2 at 14-15.] The ALJ also noted that during testing, Danurell B. exhibited cognitive ability in the "extremely low range," but that he "did not put forth effort, participate, or cooperate in the evaluation" and "had a diagnosis of malingering," and that his depression was stable on medication. [Filing No. 11-2 at 17.] The records that the ALJ cites support his conclusion regarding Danurell B.'s moderate limitations in

concentration, persistence, and pace. [*See* Filing No. 11-7 at 23; Filing No. 11-7 at 44; Filing No. 11-7 at 98; Filing No. 11-7 at 120.]

The ALJ went on to craft Danurell B.'s RFC, first discussing Danurell B.'s and his wife's statements regarding his mental health and discounting them, explaining, with citation to medical records:

> The claimant's statements to treating providers were often inconsistent with one another, as he would often tell his primary care doctor that his depression felt stable and well-controlled while telling his mental health provider that his symptoms were worsening. Further, even during periods of alleged worsening symptoms, the claimant did not display significantly limiting symptoms. For example, at the consultative examination, the claimant was nicely groomed, fully oriented, and attentive to tasks, with normal speech flow and normal thought content. Importantly, because the claimant did not put forth effort, participate, or cooperate in the evaluation, the examiner assessed the claimant with malingering. In February of 2024, the claimant was well-groomed, with normal psychomotor activity, appropriate and unremarkable thought content, logical, coherent, and sequential thought processes, normal speech, average intellectual functioning, good attention/concentration, fair insight and judgment, and fair immediate and recent memory. At a therapy appointment in May of 2024, the claimant reported that he had started to work on his coping skills. In sum, the medical evidence and other evidence in the record is not consistent with the claimant's allegations regarding his symptoms.

[Filing No. 11-2 at 17-18 (citations omitted).] The records that the ALJ cited are consistent with his explanation. [*See* Filing No. 11-7 at 22-23; Filing No. 11-7 at 44; Filing No. 11-7 at 98; Filing No. 11-7 at 106-07; Filing No. 11-7 at 120.]

The ALJ then noted that Drs. Maura Clark and Joelle Larsen opined that Danurell B.'s mental impairments were non-severe and "supported their opinions with an explanation of the evidence used to formulate them," but also noted that there was other evidence that was consistent with finding that he had moderate mental limitations, including the fact that he had been prescribed medicine for mental health symptoms. [Filing No. 11-2 at 18.] The ALJ ultimately found Drs. Clark's and Larsen's opinions unpersuasive and also discounted an opinion from Dr. Brandon

Robbins because he "did not report any specific functional limitations." [Filing No. 11-2 at 18.] Additionally, the ALJ found that an unknown treating provider's opinion that Danurell B. was unable to work was "inherently neither valuable nor persuasive," and did not factor that opinion into his analysis. [Filing No. 11-2 at 18.]

The ALJ found, based on the evidence he had discussed, that Danurell B. "has experienced anger, irritability, poor eye contact, a flat affect, self-isolation, crying spells, low motivation, low energy, loss of interest/pleasure, excessive worry, avoidance, impaired decision-making, and difficulty concentrating due to major depressive disorder and anxiety disorder." [Filing No. 11-2 at 18.] While some of those issues may be accounted for by limiting Danurell B.'s contact and interactions with supervisors, co-workers, and the public, it appears that the ALJ attempted to account for other limitations by limiting Danurell B. to simple, routine, and repetitive tasks. But the Seventh Circuit has instructed that an RFC limiting a claimant to a job involving "simple, routine, or repetitive tasks in a work environment…free of fast paced production requirements, involving only simple work related decisions with few if any work place changes and no more than occasional interaction with coworkers or supervisors" did not adequately account for a claimant's difficulties maintaining concentration, persistence, or pace which "were related to [the claimant's] diagnosed anxiety and depression, as well as her physical problems and pain." *Varga*, 794 F.3d at 812-15. Here, once the ALJ recognized that Danurell B. had moderate limitations in concentration, persistence, and pace, limiting him to simple, routine, and repetitive tasks – even with additional limitations relating to who he can interact with and how frequently – did not sufficiently account for those limitations. *See id.* This error requires remand.

*3. Ability to Adapt or Manage Oneself*

The ALJ found that Danurell B. had a moderate limitation in adapting or managing himself, noting reports from Danurell B. and his wife that he had trouble handling stress, adjusting to changes in routine, and leaving the house, and had low energy and low motivation. [Filing No. 11-2 at 15.] While the RFC limits Danurell B.'s interactions with supervisors, other employees, and the public and also limits him to simple, routine, and repetitive tasks, these limitations do not appear to relate to his ability to adapt or manage himself. For example, the RFC does not address Danurell B.'s issues with handling stress and changes in routine. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(4) (adapting or managing oneself "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; [and] managing your psychologically based symptoms."). On remand, the ALJ must ensure that Danurell B.'s RFC sufficiently accounts for his moderate limitations in his ability to adapt or manage himself.

**B. Hypothetical Questions to the VE**

Because the Court has already found that remand is required due to shortcomings in Danurell B.'s RFC, the Court briefly addresses the remaining issue Danurell B. raises – whether the ALJ's hypothetical questions to the VE were sufficient.

Danurell B. argues that the ALJ "failed to frame a hypothetical question to the [VE] that accurately described all of the mental limitations recognized…in the ALJ's decision." [Filing No. 15 at 11.] He asserts that while the ALJ's hypotheticals to the VE included some of Danurell B.'s limitations in the RFC, the ALJ did not include "any limitations in [Danurell B.'s] ability to concentrate over a period of time and persist at tasks." [Filing No. 15 at 11-12.] Danurell B. argues further that the ALJ did not account for his finding that Danurell B. has moderate limitations

in adapting or managing himself when he questioned the VE, and did not describe those limitations. [Filing No. 15 at 14.]

In his response, the Commissioner does not address Danurell B.'s argument that the ALJ's hypothetical questions to the VE were insufficient. [*See* Filing No. 17.]

Danurell B. argues in his reply that the ALJ omitted some of Danurell B.'s limitations in his hypothetical questions to the VE "because the VE testified that one outburst per month could result in immediate or eventual termination," and because the VE testified that "if the claimant needed brief additional supervision on an hourly basis there would be no competitive work." [Filing No. 18 at 3.]

Because the Commissioner did not address the sufficiency of the ALJ's hypothetical questions to the VE, he has waived any opposition to Danurell B.'s arguments. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument…results in waiver."). In any event, the Court finds that Danurell B.'s arguments have merit. The ALJ questioned the VE as follows;

> Q: Okay, I want you to assume a hypothetical individual of the claimant's age and education and assume that this individual is limited to performing simple, and routine, and repetitive tasks. Interacting occasionally with supervisors, occasional, let me, occasional incidental interaction with coworkers in that [he] may not listen or talk to coworkers to perform job tasks, is not an integral part of the team and does not work in tandem with others. No interaction with the public. Is there any work in the national economy for such a hypothetical individual?
>
> A: Yes, Your Honor. There would be jobs that would comport, for example the occupation of a floor cleaner, code number 381.687-034, it is medium work, with an SVP of 2, I would estimate around 119,000 jobs in the national economy. The occupation of a motor vehicle assembler could be performed, code number 806.684-010, again medium work, with an SVP of 2, I would estimate around 245,000 jobs in the national economy. The work of a hand packer would comport, code number 920.587-018, it is medium work, with an SVP of 2, I would estimate around 70,000 jobs in the national economy.

> Q: Can an individual sustain gainful, unskilled employment in a competitive work environment without accommodations if they're going to be off task more than 10 percent of the workday on an ongoing basis?
>
> A: No, Your Honor.
>
> Q: What if they were going to be absent more than one day per month on an ongoing basis including arriving late or leaving early?
>
> A: That would also be work preclusive.
>
> Q: Okay. And if an individual had a verbal explosive outburst toward a supervisor at least one time per month on an ongoing basis would that have any impact on their employability?
>
> A: Certainly, depending on the severity of the infraction, it could result in immediate termination. Otherwise, there would be some sort of progressive disciplinary action that would ensue. If the behavior of course continued eventually it would result in termination.

[Filing No. 11-2 at 48-50.]

The Seventh Circuit has found that simply including a limitation to simple, routine, and repetitive tasks when questioning the VE does not account for limitations in concentration, persistence, and pace. *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2008); *see also O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) ("[E]mploying terms like simple, repetitive tasks on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence, and pace."). Rather, the ALJ must include moderate limitations in concentration, persistence, and pace in his hypothetical questions to the VE and the ALJ did not do so here. For this additional reason, remand is required.[4]

---

[4] Danurell B. also argues that the ALJ failed to account for his finding that Danurell B. had moderate limitations in adapting or managing himself in his hypothetical questions to the VE. [Filing No. 15 at 14.] On remand, the ALJ should ensure that these limitations are reflected in hypothetical questions to the VE.

## IV.
## CONCLUSION

For the foregoing reasons, the Court **REVERSES** the ALJ's decision denying Danurell B. benefits and **REMANDS** this matter pursuant to 42 U.S.C. § 405(g) (sentence four) for further proceedings consistent with this decision. Final judgment shall issue accordingly.

Date: 8/28/2026

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**